UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 09-80252-CIV-HURLEY

RICHARD STONE and
LESLEY BLACKNER STONE,
    plaintiffs,

vs.

ZIMMER, INC., MARCIE MERSON, M.D.
and PALM BEACH PAIN INSTITUTE, INC.,
    defendants.
_____/

## ORDER DENYING in PART & GRANTING in PART
## PLAINTIFF'S MOTION FOR REMAND

**THIS CAUSE** is before the court upon the plaintiff's motion to remand this action to the state court from which it was removed. [ DE# 6]. For reasons stated below, the plaintiff's motion to remand is denied in part and granted in part.

### I. BACKGROUND

On January 14, 2009, plaintiffs Richard Stone and Lesley Blackner Stone ("Stone") filed this suit against defendant Zimmer, Inc. ("Zimmer"), Marcie Merson, M.D. ("Merson") and the Palm Beach Pain Institute, Inc. ("Pain Institute") in the Palm Beach County Circuit Court in and for the Fifteenth Judicial Circuit, Palm Beach County, Florida. It is undisputed that Zimmer is a citizen of Indiana, while Merson and the Pain Institute are citizens of the State of Florida.

In June, 2006 Dr. Douglas Padgett performed a right total hip revision on Mr. Stone using a Zimmer Hip System Porous Revision System at the Hospital for Special Surgery in New York, New York. Soon after the hip replacement surgery, the Zimmer implant began to fracture and split,

1

ultimately breaking into two pieces inside Mr. Stone's femur. Unaware of the rupture, in August 2007 Mr. Stone presented for pain management treatment to Dr. Merson at the Palm Beach Pain Institute. Dr. Merson diagnosed Mr. Stone with chronic myofascial pain, and between August 2007 through February 2008 treated him with trigger point injections, Cortisone injections and Botox injections. On April 4, 2008, Mr. Stone presented to Dr. Andrew Hodge, an orthopedic surgeon ion West Palm Beach who promptly ordered an x-ray of the right hip and discovered a complete fracture of the stem of the hip prosthesis. Dr. Hodge recommended immediate replacement surgery, and as a result, on April 16, 2008, Dr. Padgett explanted the Zimmer prosthesis and replaced it with a Stryker Hip Revision System at the Hospital for Special Surgery in New York, New York.

By his current complaint, Mr. Stone does not assert any claim against Dr. Padgett or the Hospital for Special Surgery in New York. Rather, he asserts that Dr. Merson [and vicariously the Pain Institute] committed medical malpractice because Dr. Merson failed to take x-rays and properly diagnose the implant fracture during the time she treated Mr. Stone between August 2007 and February 2008. Mr. Stone also asserts a fraud claim against Merson and the Pain Institute, contending that Dr. Merson's malpractice was motivated by fraudulent scheme to charge plaintiff more than the rates which the Palm Beach Pain Institute had contracted to receive from plaintiff's health insurance company (Complaint, Counts 9, 10 and 11).

Further, Mr. Stone charges Zimmer with negligence and strict liability in the manufacture and design of the Zimmer implant (Counts 1, 2), negligent failure to warn (Count 3), breach of express and implied warranties (Counts 4, 5 and 6) and intentional misrepresentation regarding the care and quality of the Zimmer implant (Count 7).

On February 23, 2009, Zimmer removed the case to this court based on diversity of citizenship, asserting that the two non-diverse health care defendants were improperly joined because the medical malpractice action and products liability claims involve significantly unique factual and legal issues. For reasons stated below, the court agrees and, employing the doctrine of "procedural misjoinder," has determined to sever and remand the negligence and fraud claims against the non-diverse health care providers, while retaining federal jurisdiction over the products liability claims against Zimmer.

## II. DISCUSSION

The party invoking the court's jurisdiction has the burden of proving facts supporting the existence of federal jurisdiction. *McCormick v Aderholt*, 293 F.3d 1254, 1257 (11th Cir. 2002); *Triggs v John Crump Toyota, Inc.*, 154 F.3d 1284, 1287 n. 4 (11th Cir. 1998). In this case, the burden is on Zimmer to establish, by clear and convincing evidence, that the amount in controversy more likely than not exceeds the $75,000 jurisdictional threshold of this court, and that the joinder of the non-diverse parties, Dr. Merson and the Pam Beach Pain institute, was fraudulent or improper. *Henderson v Washington Nat. Ins. Co.*, 454 F.3d 1278, 1284 (11th Cir. 2006).

"Fraudulent joinder" is a judicially created doctrine that provides an exception to the requirement of complete diversity in three instances: (1) where there is no possibility that the plaintiff can prove a cause of action against the resident (non diverse) defendant; (2) where there is outright fraud in the plaintiff's pleading of jurisdictional facts; and (3) where a diverse defendant is joined with a non-diverse defendant as to whom there is no joint, several, or alternative liability *and* the claim against the diverse defendant has no real connection to the claim against the non-diverse defendant. *Tapscott v MS Dealer Service Corp.,* 77 F.3d 1353, 1360 (11th Cir. 1996),

3

abrogated on other grounds by *Cohen v Office Depot, Inc.,* 204 F.3d 1069 (11th Cir. 2000). *Triggs v John Crump Toyota, Inc.*, 154 F.3d 1284, 1287 (11th Cir. 1998).

In this case, Zimmer invokes the third "fraudulent misjoinder" situation, sometimes referred to as "procedural misjoinder." *See Tapscott, supra,* 77 F.3d at 1360; *Palmer v Davol, Inc.,* 2008 WL 5377991 (D. R. I. 2008), citing 14B, Wright, Miller & Cooper, Fed. Prac. & Proc. 3d § 3723 at 658 (describing fraudulent misjoinder as "new form of fraudulent joinder").

"Procedural misjoinder" involves a purposeful attempt to defeat removal by joining together claims against two or more defendants where the presence of one would defeat removal, and where in reality there is no sufficient factual nexus among the claims to satisfy the permissive joinder standard provided under Rule 20 of the Federal Rules of Civil Procedure. 14B Wright, § 3723 at 657; *Synder v Davol, Inc.*, 2008 WL 113902 at *8 (D. Or. 2008).

In *Tapscott,* the Court made clear that "mere misjoinder" does not constitute "fraudulent joinder." Rather, it held that in certain "egregious," circumstances procedural misjoinder sill constitute fraudulent joinder. *Id;* see also 14B Wright, 3723 at 657-58. The court did not define "egregious" misjoinder, leading to some disarray in the case law and criticism by commentators. *See e.g. Yates v Medtronic, Inc.*, 2008 WL 4016599 *8 n. 4 (S.D. Ala. 2008), and cases collected *infra;* 14B Wright, Miller & Cooper, Federal Prac. & Proc. 3d § 3723 at 657-658 (noting that *Tapscott'*s language "injects a considerable degree of ambiguity" into the doctrine by intimating there is some threshold above simply misjoinder that needs to be passed to create new form of fraudulent joinder).

4

The court thus begins its assessment of the propriety of joinder in this case with inquiry into whether the claims against Zimmer and the Florida health care providers are permissibly joined in one action under Rule 20(a) of the Federal Rules of Civil Procedure.

Rule 20(a) allows permissive joinder of defendants as follows:

> All persons ... may be joined in one action as defendants if there is asserted against them jointly, severally, or in the alternative, any right to relief in respect of or arising out of the same transaction, occurrence or series of transactions or occurrences and if any question of law or fact common to all defendants will arise in the action.

If defendants have been misjoined for the failure to satisfy these conditions, Rule 21 allows for severance of those defendants:

> Misjoinder of parties is not ground for dismissal of an action. Parties may be dropped or added by order of the court on motion of any party or of its own initiative at any stage of the action and on such terms as are just. Any claim against a party may be severed and proceeded with separately.

Fed. R. Civ. P. 21.

In this case, Zimmer argues that the products liability claims against it and the malpractice and fraud claims against Dr. Merson and the Pain Institute are legally distinct, and that none of the causes of action overlap one another. In addition, it asserts that the facts that would support a cause of action against the Florida health care providers involve the quality of medical care given to Mr. Stone a year after his initial Zimmer implant surgery, while the facts that would support a claim against Zimmer have nothing to do with the quality of that care but instead focus on the design, manufacture and sufficiency of warnings provided with the Zimmer hip prosthesis. Thus, Zimmer contends that the claims against it do not arise out of the same transaction or occurrence as the claims against Dr. Merson and the Pain Institute, and that there is no basis for alleging joint and

5

several liability against Zimmer and the Florida health care providers.

In this vein, it distinguishes cases where a malpractice claim against a surgeon implanting [or explanting] a medical device is joined with a product liability claim against the manufacturer of that device, where the tortfeasors' conduct combines to cause a single injury, thus meeting the conventional definition of "joint and several" liability.[1] *See e.g. Shreffler v Philippon*, 873 So.2d 1280 (Fla. 2004)(malpractice complaint against orthopedic surgeon joined with products case against manufacturer of motorized shavers that surgeon used during hip arthroscopy); *Ash v Providence Hosp*, 2009 WL 424586 (S.D. Ala. 2009) (no misjoinder in suit combining products liability claim against manufacturer of heparin and doctor who performed heart catheterization and coronary bypass procedure during which plaintiff was administered heparin); *Greene v Novartis Pharmaeceuticals Corp*, 2007 WL 3407429 (M.D.Ga. 2007)(products liability claim against pharmaceutical manufacturer of eczema prescription joined with medical malpractice claim against physician that prescribed the product for patient under age of two); *McDowell v Davol, Inc.*, 2008 WL 2713708 (E.D. Tenn. 2008)(products case against manufacturer of hernia mesh patch joined with malpractice case against surgeons who implanted the patch).

---

[1]In Florida, "joint and several" liability refers to the ability of a plaintiff to sue one or more of the parties to liability separately, or all together at his option.

"Joint tortfeasors" are defined as "[t]hose who act together in committing wrong, or whose acts if independent of each other, unite in causing single injury." *See Ass'n for Retarded Citizens-Volusia, Inc v Fletcher*, 741 So.2d 520, 530 n. 3 (Fla. DCA 1999), citing Black's Law dictionary 752-53 (5th ed. 1979).

*See e.g. Temple v Synthes Corporation, Ltd.*, 498 U.S. 5, 111 S. Ct. 315, 112 L.Ed.2d 263 (1990)(in action against manufacturer of "plate and screw deice"implanted in patient's lower spine, doctor who performed implant surgery and hospital where surgery was performed were potential joint tort tortfeasors but not indispensable parties to suit).

Rather, Zimmer contends that the alleged delay in replacement surgery caused by Dr. Merson's alleged malpractice in failing to make a timely accurate diagnosis of the source of Mr. Stone's persistent pain is separate and distinct injury from the damage caused by the implant failure itself, and that the conduct of the product manufacturer and subsequent treating pain management physician did not combine to cause a single injury.

Upon consideration, the court agrees that Zimmer and the subsequent Florida health care providers are properly viewed as successive, rather than joint tortfeasors,[2] and that Dr. Merson and the Pain Institute are improperly joined in this action against Zimmer because their alleged torts were neither joint nor concurring and the liability of these actors does not "arise out of the same transaction, occurrence or series of transactions or occurrences."

Stone's claim against Dr. Merson sounds in medical malpractice, and would require evidence on medical care, treatment and services provided by Dr. Merson some year after the initial implant surgery. Stone's claims against Zimmer are product liability and general negligence claims based on alleged manufacturing and design defects, failure to properly warn and its alleged intentional misrepresentation of health risks associated with the Zimmer hip implant. These claims would require evidence on the development, manufacture and testing of Mr. Stone's implant, along with evidence of Zimmer's knowledge, warnings and representations regarding defective implants.

---

[2] *See generally Ass'n for Retarded Citizens of Volusia Inc v Fletcher*, 741 So.2d 520 (Fla. DCA 1999)(negligent defendant who causes an initial injury and health care workers whose subsequent negligence causes additional injury not jointly and severally liable); *D'Amario v Ford Motor Co.*, 806 So.2d 424 (Fla. 2001)(per curiam) (in auto crashworthiness case between car accident victim and auto manufacturer, third party driver responsible for initial collision and manufacturer are not joint or concurrent tortfeasors, precluding apportionment of fault under Fla. Stat. §768.81);

Any liability that may be found against Zimmer or Dr. Merson would not be a basis for liability as to the other, and separate liability as to each could be found.

The joinder of the malpractice claim against Dr. Merson and the Pain Institute with the product liability claim against Zimmer is thus inappropriate because thee claims do not both involve common questions of law or fact and do not assert joint, several or alternative liability "arising out of the same transaction, occurrence or series of transactions or occurrences." Fed. R. Civ. P. 20(b). *See e.g. In re Guidant Corp. Implantable Defibrillator Products Liability Litigation (Brown v Guidant Corp.),* 2007 WL 2572048 (D. Minn. 2007)(in products liability case against manufacturer of defective defibrillator, medical malpractice claim lodged against physician who subsequently explanted the device and replaced epicardial leads, causing infection and need for further surgeries held improperly joined with products case).

Because Dr. Merson was improperly joined as a defendant, her citizenship, and that of her employer, Palm Beach Pain Institute, should be disregarded in determining the existence of complete diversity. With the elimination of the Florida health care provider defendants, complete diversity of citizenship does exist because at the time the complaint was filed, the Stones were citizens of Florida and Zimmer was a citizen of Indiana. In this situation, Zimmer's statutory right of removal prevails over that of permitting a plaintiff's choice of forum.

The court will accordingly deny the motion to remand in part as to plaintiff's claims against Zimmer, but grant the motion to remand to the extent that the court has determined to *sua sponte* sever and remand the Stone's claims against Dr. Merson and the Pain Institute. *See e.g. Newman-Green, Inc. v Alfonzo-Larrain*, 490 U.S. 826, 832-33, 109 S. Ct. 2218, 104 L.Ed.2d 893 (1989)(Rule 21 invests district courts with authority to dismiss a dispensable party whose presence spoils

statutory diversity jurisdiction); *Ingram v CSX Transportation, Inc.*, 146 F.3d 858 (11th Cir. 1998).

It is accordingly **ORDERED and ADJUDGED** :

1. The plaintiff's motion for remand [DE# 6] is **DENIED** as to defendant Zimmer, Inc.

2. The plaintiff's motion for remand [DE# 6 ] is **GRANTED** as to defendants Marcie Merson, M.D. and the Palm Beach Pain Institute, Inc., with all claims against these Florida defendants **SEVERED AND REMANDED** to the Palm Beach County Circuit Court in and for Palm Beach County, Florida.

3. The clerk of the court shall send a certified copy of this order to the Clerk of the Fifteenth Judicial Circuit in and for Palm Beach County, Florida pursuant to 28 U.S.C. §1447.

**DONE and SIGNED** in Chambers in West Palm Beach, Florida this 25th day of June, 2009.

_____
Daniel T. K. Hurley
United States District Judge

copies to: all counsel